**ALABAMA**

**RETAIL INSTALLMENT CONTRACT, SECURITY AGREEMENT, WAIVER OF TRIAL BY JURY AND AGREEMENT TO ARBITRATION OR REFERENCE OR TRIAL BY JUDGE ALONE (Contract)**

**MH FIXED RATE CONTRACT**
LOAN PLAN: F01 032398
OFFICE NUMBER: 79037
LOAN SOURCE NO.: ____
ACCT. NO.: ____
FUNDING CODE: ____

BUYER(S):  NAME: OBIE L. TUBBS JR
           NAME: TAMMY TUBBS
           NAME: ____
BUYER'S    NAME: ____
ADDRESS: RT 1 BOX 263D              CITY: MARION        COUNTY: PERRY   STATE: AL   ZIP: 36756
                         PHONE:                S. SEC. #(S): 8500    -3267
PROPOSED LOCATION OF MANUFACTURED HOME: RT 1 BOX 263D, MARION, AL 36756

"I," "me," "myself" or "my" mean all persons who sign this Contract as buyer or co-buyer, jointly and severally, and "you" or "your" mean the Seller and any assignee. This Contract will be submitted to the Creditor indicated below, at a local office and, if approved, it will be assigned to that Creditor. On the date of this Contract, I buy from you on a credit sale basis the manufactured home described on page 2, together with furnishings, equipment, appliances and accessories included in the manufactured home at the time of purchase (called "Manufactured Home").

**CREDITOR:** BANK OF AMERICA, FSB

**PROMISE TO PAY:** I promise to pay you at such address as you may direct the Unpaid Balance shown on page 2 of this Contract (Item 5) with interest at the rate of:

11.75 % per year until the debt is fully paid. I will pay this amount in installments as shown in the payment schedule until the Unpaid Balance is fully paid. If, on 04/01/23, I still owe any amount under this Contract, I will pay such amount in full on that date, which is called the "Maturity Date." Each monthly payment will be applied as of its scheduled due date. If no interest rate is disclosed above, the interest rate is the Annual Percentage Rate shown below.

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments | Total Sale Price |
|---|---|---|---|---|
| The cost of my credit as a yearly rate. | The dollar amount the credit will cost me: | The amount of credit provided to me or on my behalf: | The amount I will have paid after I have made all payments as scheduled: | The total cost of my purchase on credit including my down payment of $ 1,650.00 : |
| 11.75 % | $ 64,325.85 | $ 30,567.15 | $ 94,893.00 | $ 96,543.00 |

See Contract terms for additional information about nonpayment, default, required repayment in full before the scheduled date, and prepayment refunds and penalties.

Prepayment: If I pay off early, I will not have to pay a penalty, but I will not be entitled to a refund of the Prepaid Finance Charge, if any.

| | | |
|---|---|---|
| 300 | $ 316.31 | Monthly, beginning MAY 01 , 19 98 |
| ____ | $ .00 | Monthly, beginning ____, 19 ____ |
| ____ | $ .00 | Monthly, beginning ____, 19 ____ |
| ____ | $ .00 | Monthly, beginning ____, 19 ____ |

**Security:** I give you a security interest in the goods or property being purchased.

**Late Charge:** If a payment is more than 15 days late, I will be charged 5 % of the unpaid amount of such payment, not to exceed $ 5.00 .

**Assumption:** Someone buying my Manufactured Home may not assume the remainder of the Contract on the original terms without your prior written consent.

**Estimates:** All numerical disclosures except the late payment disclosures are estimates.

### Description of Manufactured Home:

032398

| | |
|---|---|
| TRADE NAME: HORTON HOMES | MODEL: MIRAGE III |
| YEAR: 98  NEW: X  USED: ___ | LENGTH: 76 ft.  WIDTH: 16 ft. |
| SERIAL NUMBERS: H206514G | |

ADDITIONAL ACCESSORIES AND FURNISHINGS: AIR CONDITNG    SKIRTING

### ITEMIZATION OF AMOUNT FINANCED

1. Cash Price (Including Sales Tax of $ 702.15 ): $ 31,909.15
2. a. Cash Down Payment ........ $ 1,650.00
   b. Trade-In (Year, Make, Model): _____
      Length _____ Width _____
      Gross Value $ _____ .00  Liens $ _____ .00
      (Seller to pay off)
      Net Trade-In Value       $ _____ .00
      Total Down Payment       $ 1,650.00
3. Unpaid Balance of Cash Price (1 minus 2)  $ 30,259.15
4. Amounts paid to others on my behalf:*
   a. To Insurance Companies:
      (1) Property Insurance  $ 293.00
      (2) Credit Life Insurance  $ .00
   b. To Public Officials:
      (1) Certificate of Title  $ 15.00
      (2)                       $ .00
   c. To Creditor:
      For: _____           $ .00
   d. To: _____
      For: _____           $ .00
   e. To: _____
      For: _____           $ .00
   f. To: _____
      For: _____           $ .00
   g. To: _____
      For: _____           $ _____
   h. To: _____
      For: _____           $ _____
   Total (a+b+c+d+e+f+g+h)   $ 308.00
5. Unpaid Balance (3 plus 4)   $ 30,567.15
6. Prepaid Finance Charge      $ .00
7. Amount Financed (5 minus 6) $ 30,567.15

*I understand and agree that a portion of certain of these amounts may be retained by you or your affiliate.

### INSURANCE

**PROPERTY INSURANCE:** Property Insurance on the Manufactured Home is required for the term of this Contract. I have the right to choose the person through whom it is obtained. By marking the appropriate line below, I elect to buy the coverage indicated from you for the term and premium shown, and I want it financed on this Contract.

| Type of Insurance | Term | Premium |
|---|---|---|
| X Physical Damage Coverage | 12MOS | $ 293.00 |
| ___ | 0MOS | $ .00 |
| ___ | | $ _____ |

LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED UNLESS INDICATED IN THE PROPERTY INSURANCE SECTION ABOVE.

**CREDIT LIFE INSURANCE:** Credit Life Insurance is not required for this Contract or a factor in its approval. If I elect Credit Life Insurance, the name(s) of the proposed insured(s) are:

Proposed Insured _____
Proposed Insured _____
(Only spouse can be insured jointly.)

This insurance may not pay off all of my debt, and the exact amount of coverage is shown on my policy or certificate. My signature indicates my election to obtain Credit Life Insurance coverage for the term and premium shown:

| Type of Coverage | Term | Premium |
|---|---|---|
| ___ Single | _____ | $ _____ |
| ___ Joint | _____ | $ _____ |

_____ Date _____
(signature)

_____ Date _____
(signature)

(If joint coverage is desired, both proposed insureds must sign.)

AL250828-0397                                         PAGE 2 OF 6

## ADDITIONAL TERMS AND CONDITIONS

**SECURITY INTEREST:** I grant you a security interest under the Uniform Commercial Code in (1) the Manufactured Home and in all goods that are or may hereafter by operation of law become accessions to it, (2) all appliances, machinery, equipment and other goods furnished with the Manufactured Home (whether or not installed or affixed to it) including but not limited to the items listed as "Additional Accessories and Furnishings" on page 1 of this Contract, (3) any refunds of unearned insurance premiums financed in this Contract, (4) any substitutions or replacements of the foregoing, and (5) all proceeds of such Manufactured Home and accessions, and of any Additional Accessories and Furnishings. This security interest secures payment and performance of my obligations under this Contract, including any additional debt arising because of my failure to perform my obligations under this Contract and includes any contractual extensions, renewals or modifications. My execution of this Contract constitutes a waiver of my personal property and homestead exemption rights to the personal property herein described. I will sign and deliver to you whatever financing statements and other documents you deem necessary to allow you to perfect your security interest in any personal property and fixtures. I agree that you may file this security instrument or a reproduction thereof in the real estate records or other appropriate index as a financing statement for any of the items specified above. Any reproduction of this security instrument or any other security agreement or financing statement, and any extensions, renewals, or amendments thereof, shall be sufficient to perfect a security interest with respect to such items.

**PREPAYMENT: I MAY PREPAY THIS CONTRACT IN FULL OR IN PART AT ANY TIME WITHOUT PENALTY, BUT I WILL NOT BE ENTITLED TO A REFUND OF THE PREPAID FINANCE CHARGE, IF ANY. IF I MAKE A PARTIAL PREPAYMENT, THERE WILL BE NO CHANGE IN THE DUE DATES OR AMOUNTS OF MY MONTHLY PAYMENTS, UNLESS YOU AGREE IN WRITING TO THOSE CHANGES.**

**PROPERTY INSURANCE:**
a. **Minimum Coverage.** I am required to provide physical damage insurance coverage protecting the Manufactured Home for the term of this Contract against loss by fire, hazards included within the term "extended coverage" and any other hazards, including flood, for which you require insurance, in an amount equal to the lesser of the actual cash value of the Manufactured Home or the remaining unpaid balance I owe from time to time under this Contract (the "Minimum Coverage"). The insurance policy will contain a loss payable clause protecting you (as your interest may appear), and provide for a 10-day notice of cancellation to you. Unless you consent in writing, I shall not add any additional loss payee to the insurance policy. I have the right to choose the person through whom the property insurance policy is obtained. If my insurance coverage expires or is cancelled prior to payment in full of this Contract, I must obtain no less than the Minimum Coverage at my expense for the remaining term of this Contract. Should I fail to maintain the Minimum Coverage, you may, but are not obligated to, obtain insurance coverage. I agree that any insurance you purchase may be for the protection of only your interest in the Manufactured Home, may not fully protect me in the event of a loss, and may be for such reasonable period as you determine. If you decide, in your sole discretion, to obtain insurance, you will notify me of that fact and that the cost, plus interest at the Contract rate, will be added to my debt. I will repay such amount during the term of the policy in the manner requested by you. I understand that the insurance premiums may be higher if you must purchase the insurance than might be the case if I had purchased the insurance, and that you may purchase the insurance from an affiliated company which may receive a profit for this service.

b. **Assignment and Application of Insurance Proceeds.** I hereby grant and assign to you the proceeds of any and all insurance coverage on the Manufactured Home, including any optional coverage, such as earthquake insurance, which in type or amount is beyond the Minimum Coverage. In the event of a loss to the Manufactured Home, I shall give prompt notice to you and the insurance carrier. If I fail to promptly notify or make proof of loss to the insurance carrier, you may do so on my behalf. All physical damage insurance proceeds, including proceeds from optional coverage, shall be applied to restoration or repair of the Manufactured Home, unless you and I agree otherwise in writing or unless such restoration or repair is not economically practical or feasible, or your security interest would be lessened. If such restoration or repair is not practical or feasible, or your security interest would be lessened, you shall apply the insurance proceeds to the remaining unpaid balance of this Contract, whether or not then due, and give me any excess. I authorize any insurer to pay you directly. I hereby appoint you as my limited attorney-in-fact to sign my name to any check, draft, or other document necessary to obtain such insurance payments.

**LATE CHARGE:** I agree to pay a late charge for late payment as set forth on the front of this Contract. Only one late charge will be made on any delinquent installment regardless of the period for which that installment remains in default. After this Contract matures, whether by acceleration or otherwise, I will not be charged a late charge.

**RETURNED CHECK CHARGES:** I will pay you the greater of $20 or the actual charge of the dishonoring institution (or such higher amount as allowed by law) if any check given to you is not honored because of insufficient funds or because no such account exists.

AL350528-0397                                                                                                        PAGE 3 OF 6

**EVENTS OF DEFAULT:** I will be in default under this Contract if: (a) I fail to make any payment when due; (b) I fail to timely make rental payments, or to pay other charges and assessments, relating to the real property and/or facility on which the Manufactured Home is located; (c) I violate restrictive covenants, rules or regulations relating to the real property and/or facility where the Manufactured Home is located; (d) I fail to keep the Manufactured Home in good repair and condition, as you may reasonably determine; (e) I remove the Manufactured Home from the address shown on this Contract unless I notify you in advance and receive your written consent; (f) I sell or attempt to sell or to transfer any beneficial interest in the Manufactured Home without first obtaining your written consent; (g) I allow the Manufactured Home to become part of any real estate without first obtaining your written consent; (h) I encumber or abandon the Manufactured Home or use it for hire or illegally; (i) I fail to promptly pay any taxes and other liens and encumbrances on the Manufactured Home or on the real property on which it is located, if this is my responsibility; and/or (j) I fail to do anything else which I have promised to do under this Contract.

**NOTICE OF DEFAULT:** If any of the above specified Events of Default have occurred, you may do whatever is necessary to correct my default. You will, except as set forth below, first give me a Notice of Default and Right to Cure Default before you accelerate payment of the remaining unpaid balance I owe you or repossess or foreclose on any property which secures this Contract. The Notice will tell me what my default is and how I can cure it. Except as required by applicable law, you are not required to send me this Notice when (1) you have already sent a Notice twice within the preceding one-year period, (2) I have abandoned or voluntarily surrendered the Manufactured Home, or (3) other extreme circumstances exist.

**REMEDIES UPON DEFAULT:** If I do not cure the default, you may do either or both of the following at the end of the notice period, as allowed by applicable law: (a) you can require me to immediately pay you the entire remaining unpaid balance due under this Contract plus accrued interest or (b) you can repossess the Manufactured Home pursuant to the security interest I give you under this Contract. If you are not required to send me the Notice of Default and Right to Cure Default, you will have these rights immediately upon my default. Once you get possession of the Manufactured Home you will sell it. If the amount from the sale, after expenses, is less than what I owe you, I will pay you the difference except as otherwise provided by law. All remedies are cumulative and you may enforce them separately or together in any order you deem necessary to protect your security.

**ARBITRATION OF DISPUTES AND WAIVER OF JURY TRIAL:**
a. **Dispute Resolution.** Any controversy or claim between or among you and me or our assignees arising out of or relating to this Contract or any agreements or instruments relating to or delivered in connection with this Contract, including any claim based on or arising from an alleged tort, shall, if requested by either you or me, be determined by arbitration, reference, or trial by a judge as provided below. A controversy involving only a single claimant, or claimants who are related or asserting claims arising from a single transaction, shall be determined by arbitration as described below. Any other controversy shall be determined by judicial reference of the controversy to a referee appointed by the court or, if the court where the controversy is venued lacks the power to appoint a referee, by trial by a judge without a jury, as described below. YOU AND I AGREE AND UNDERSTAND THAT WE ARE GIVING UP THE RIGHT TO TRIAL BY JURY, AND THERE SHALL BE NO JURY WHETHER THE CONTROVERSY OR CLAIM IS DECIDED BY ARBITRATION, BY JUDICIAL REFERENCE, OR BY TRIAL BY A JUDGE.

b. **Arbitration.** Since this Contract touches and concerns interstate commerce, an arbitration under this Contract shall be conducted in accordance with the United States Arbitration Act (Title 9, United States Code), notwithstanding any choice of law provision in this Contract. The Commercial Rules of the American Arbitration Association ("AAA") also shall apply. The arbitrator(s) shall follow the law and shall give effect to statutes of limitation in determining any claim. Any controversy concerning whether an issue is arbitrable shall be determined by the arbitrator(s). The award of the arbitrator(s) shall be in writing and include a statement of reasons for the award. The award shall be final. Judgment upon the award may be entered in any court having jurisdiction, and no challenge to entry of judgment upon the award shall be entertained except as provided by Section 10 of the United States Arbitration Act or upon a finding of manifest injustice.

c. **Judicial Reference or Trial by a Judge.** If requested by either you or me, any controversy or claim under subparagraph (a) that is not submitted to arbitration as provided in subparagraph (b) shall be determined by reference to a referee appointed by the court who, sitting alone and without jury, shall decide all questions of law and fact. You and I shall designate to the court a referee selected under the auspices of the AAA in the same manner as arbitrators are selected in AAA-sponsored proceedings. The referee shall be an active attorney or retired judge. If the court where the controversy is venued lacks the power to appoint a referee, the controversy instead shall be decided by trial by a judge without a jury.

d. **Self-Help, Foreclosure, and Provisional Remedies.** The provisions of this paragraph shall not limit any rights that you or I may have to exercise self-help remedies such as set-off or repossession, to foreclose by power of sale or judicially against or sell any collateral or security, or to obtain any provisional or ancillary remedies from a court of competent jurisdiction before, after or during the pendency of any arbitration under subparagraph (b) above. Neither the obtaining nor the exercise of any such remedy shall serve as a waiver of the right of either you or me to demand that the related or any other dispute or controversy be determined by arbitration as provided above.

YOU AND I HAVE READ AND FULLY UNDERSTAND THIS CONTRACT, INCLUDING THE PARAGRAPH CALLING FOR RESOLVING DISPUTES BY ARBITRATION, REFERENCE, OR TRIAL BY A JUDGE, AND NOT BY JURY TRIAL, AND AGREE THAT THIS CONTRACT SETS FORTH OUR ENTIRE AGREEMENT AND THAT NO OTHER PROMISES HAVE BEEN MADE.

I AGREE TO ALL THE TERMS ON ALL PAGES OF THIS RETAIL INSTALLMENT CONTRACT AND ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS CONTRACT.

ACCEPTED: The foregoing Contract is hereby assigned under the terms of the Assignment below.

SELLER: H & S HOMES, INC. DBA HORTON HOMES

SELLER'S ADDRESS: 3556 LANDLINE ROAD

SELMA, AL 367010000

SELLER'S SIGNATURE: *David L Elliott*

SELLER'S TITLE: GENERAL MANAGER

CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.

BUYER(S) SIGNATURE(S):

OBIE L. TUBBS JR

TAMMY TUBBS

DATE OF THIS CONTRACT: 3-24-98

## ASSIGNMENT BY SELLER

TO CREDITOR INDICATED ON PAGE 1 ("Creditor")

With respect to this retail installment contract ("Contract") signed by one or more buyers ("Buyer"), SELLER represents and warrants that: (1) Buyer's credit statement submitted herewith is completely accurate unless otherwise specified; (2) Buyer was legally competent to contract at the time of Buyer's execution of this Contract; (3) this Contract arose from the bona fide sale of the merchandise described in this Contract; (4) the down payment was made by Buyer in cash unless otherwise specified and no part thereof was loaned directly or indirectly by Seller to Buyer; (5) any trade-in, or other consideration, received as any part of the down payment is accurately described on page 2 and has been valued at its bona fide value, and any amount owed on such trade-in or other property is accurately described on page 2 and has been paid off by Seller prior to or contemporaneously with the assignment of this Contract to Creditor; (6) there is now owing on this Contract the amount set forth herein; (7) this Contract and any guaranty submitted in connection herewith is in all respects legally enforceable against each purported signatory thereof; (8) Seller has the right to assign this Contract and thereby to convey good title to it; (9) in the event of any claim or defense asserted by any Buyer, or any heirs or assigns of Buyer, with respect to the Manufactured Home or other property or consideration transferred pursuant to this retail installment contract, Seller agrees that it will indemnify and hold Creditor harmless from all such claims and defenses as well as from all costs reasonably incurred by Creditor in connection therewith, including but not limited to reasonable attorney fees and court costs; and (10) in accordance with the Fair Credit Reporting Act, Seller has notified Buyer that this Contract is to be submitted to Creditor.

For value received, Seller hereby assigns to Creditor all its rights, title and interest in this Contract and the property which is the subject matter hereof and authorizes Creditor to do everything necessary to collect and discharge same. All the terms of any existing written agreements between Seller and Creditor governing the purchase of Contracts are made a part hereof by reference, it being understood that Creditor relies upon the above warranties and upon said agreements in purchasing this Contract.

This Contract has been assigned to The First National Bank of Chicago, as Trustee under the Pooling and Servicing Agreement dated as of June 1, 1998 (among such Trustee, Bank of America National Trust and Savings Association and Bank of America, FSB) or to any successor Trustee thereunder.

AL350624-0397                                                                PAGE 8 OF 8

**ATTORNEY FEES:** If I prevail in any legal action or arbitration proceeding which is commenced in connection with the enforcement of this Contract or any instrument or agreement required under this Contract, or in connection with any dispute relating to this Contract, you will pay my reasonable attorney fees, court costs and necessary disbursements incurred in connection with such action or proceeding, as determined by the court, the referee, or the arbitrator(s) in accordance with the law. If you prevail in any such action or proceeding, or in the exercise of any self-help remedy as described above, I will pay any reasonable fees imposed on you by an attorney who is not your salaried employee, not to exceed 15% of the unpaid debt, together with court costs and necessary disbursements to the full extent permitted by law.

**OTHER TERMS AND CONDITIONS:** I agree: (a) to pay with my monthly installments, if requested by you to do so, the estimated amount necessary to pay yearly taxes, assessments and insurance premiums that will become due within the next twelve-month period; (b) to pay you a transfer fee if I sell the Manufactured Home, unless such fee is prohibited by law; (c) to pay interest at the Contract rate on the remaining unpaid balance plus accrued interest, from the date of maturity until paid in full; (d) to reimburse you immediately upon your demand, with interest at the Contract rate, the amount of funds you actually advance on my behalf to correct my default; and (e) that if I am married, and residing in a community property state, both my community property and separate property will be liable for all payments due under this Contract.

**ASSIGNMENT:** You may assign this Contract to any person or entity. All rights granted to you under this Contract shall apply to any assignee of this Contract.

**CREDIT INFORMATION:** You may investigate my credit history and credit capacity in connection with opening and collecting my account and share information about me and my account with credit reporting agencies. You may sell or otherwise furnish information about me, including insurance information, to all others who may lawfully receive such information. You may furnish specific information about the Manufactured Home and any insurance policies on the Manufactured Home to any insurance agent to enable such agent to quote premiums to me and solicit my insurance business.

**WAIVER:** Waiver of any default shall not constitute a waiver of any other default. No term of this Contract shall be changed unless in writing and signed by one of your officers. This Contract is the entire agreement between us and I agree that no oral or implied representations have been made to induce me to enter into this Contract.

**VALIDITY:** Wherever possible each provision of this Contract shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Contract shall be prohibited by or invalid under applicable law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Contract. This Contract shall be of no effect until and unless signed by me and you. In no event shall any charge under this Contract exceed the highest amount allowed by applicable law. If any excess charge is received, such excess shall be refunded or applied to the amount due.

**GOVERNING LAW:** Each provision of this Contract shall be construed in accordance with and governed by the laws of the state of Alabama, provided that to the extent you have greater rights or remedies under Federal law, such choice of state law shall not be deemed to deprive you of such greater rights and remedies under Federal law.



NOTICE
ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.